UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15-cr-00365-JAR-1 |
| ) | |
| KELVIN WILLIAMS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court for a bench trial on March 6 and 7, 2017, after Defendant Kelvin Williams waived his right to a trial by a jury. Upon careful review of the evidence and the arguments of the parties, and having observed the demeanor of the witnesses, the Court found on the record that the Government had proven Defendant's guilt beyond a reasonable doubt on each of Counts 1 through 7 of the indictment. Although Defendant has not expressly invoked Federal Rule of Criminal Procedure 23, the Court supplements its findings on the record with the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The evidence established beyond a reasonable doubt the following facts. On June 16, 2015, officers of the St. Louis Metropolitan Police Department ("SLMPD") responded to a residence at 4118 Shreve Avenue in the City of St. Louis, after a 911-caller reported that a burglary was in progress at that location (Testimony of SLMPD Custodian of Recordings Cliff Harper; Gv't Ex. 1 (recording of 911 call)). When the officers arrived at the residence, they observed glass on the floor of the front porch, a broken window in the front door, and blood on the broken window and a window shade attached to the door. At that time, the SLMPD officers

entered the residence and performed a protective sweep thereof. A bedroom on the main floor of the residence appeared to have been ransacked, and the bed was overturned. The officers observed, in plain view on the bedroom floor, a firearm, papers, suspected drugs, and drug paraphernalia. The officers walked to the far end of the bedroom, where a long wooden dresser was wedged in front of an interior door. Because the door could not be opened and the dresser could not be passed without moving it, an officer moved the dresser, discovering a second gun and additional drugs that had previously been covered by the dresser. SLMPD Sergeant Scego observed in plain view scales, rubber bands, and baggies, i.e., items often associated with the drug trade. Officers then opened the door at the far end of the bedroom to complete their protective sweep of the residence (Testimony of Sgt. Mike Scego; Gv't Ex. 2-14 (photographs of 4118 Shreve Ave.)).

    Officers then entered the living room and dining room area of the residence where they discovered a home security system which included a digital video recorder ("DVR") connected to a television and four video cameras. After securing the first and second floors of the residence, Sergeant Scego descended the basement stairs with the assistance of his flashlight. As he walked down the stairs, he observed a space that had been cut out of the ceiling near the wall by the stairs. He noticed a clear bag containing white powder hanging out of the space, in plain view. After the basement was cleared, Sergeant Scego seized the bag of white powder, which resembled some of the bags of suspected drugs officers had already found in the bedroom (Testimony of Sgt. Scego; Gv't Ex. 15-16). Before leaving Defendant's residence, the SLMPD officers unplugged the DVR and seized it, along with the guns and suspected drugs (Testimony of Sgt. Scego and Det. Ron Vaughn; Gv't Ex. 14, 19 (photographs of drugs, guns, and DVR

2

device seized from 4118 Shreve Ave.)). The SLMPD officers did not find any instruments of drug use during their protective sweep of 4118 Shreve Ave. (Testimony of Det. Ron Vaughn).

Subsequent forensic analysis of the DVR hard drive revealed that the four cameras attached to the DVR had recorded and saved hundreds of videos of Defendant's activities within the residence, some of which the Government presented at trial. Specifically, the Government introduced videos depicting Defendant receiving, bagging, cutting, weighing, selling, and distributing narcotics inside the residence (Gv't Ex. 45A-45F; 52; 53A-53D; 54A-54D; 55A-55B; 57A-57D; 58; 59A-59B; 62A-62C; 71A). The DVR video also depicts Defendant in possession of a firearm on various occasions (Gov't Ex. 46-52, 56, 60, 61A-B, 62A-62D, 65-69, 70A-70B). In one video, Defendant hid a firearm under a sofa cushion moments before a visitor arrived at the residence to purchase narcotics from Defendant (Gov't Ex. 70A-70B). Another DVR video shows Defendant displaying a firearm and narcotics on a nearby coffee table while he participated in a hand-to-hand drug transaction (Gv't Ex. 45A-45F).

Laboratory testing later confirmed that the suspected drugs that were seized from 4118 Shreve Ave. on June 16, 2015, included 16.16 grams of substances containing heroin, 24.06 grams of a substance containing both heroin and morphine, 108.53 grams of a substance containing methamphetamine, 118.43 grams of a substance containing cocaine, 0.45 grams of cocaine base; and 53.99 grams of marijuana (Gov't Ex. 43). One of the guns seized from 4118 Shreve Ave. on June 16, 2015 was a Walther make P1 model semi-automatic pistol, which was subsequently test fired. The firearm functioned as designed, and no mechanical defects were observed. Walther Company was located in Germany at the time the firearm was produced, and the firearm was imported by the PW Arms Inc. Company, which is located in Redmond, Washington (Testimony of ATF Agent Larry Stoddard; Gov't Ex. 44). At trial, Detective Ron

Vaughn and ATF Agent Larry Stoddard both testified that the DVR video appeared to depict Defendant possessing the Walther P1 semi-automatic pistol (Testimony of Det. Vaughn; Testimony of Agent Stoddard; Gov't Ex. 50).

On July 30, 2015, Defendant was indicted by a federal grand jury on seven counts: (1) felon in possession of a firearm, in violation of 21 U.S.C. § 922(g)(1); (2) possession with intent to distribute in excess of 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(B)(viii); (3) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(C); (4) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(C); (5) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(D); (6) maintaining a premises for the purpose of distributing a controlled substance, in violation of 21 U.S.C. § 856(b); and (7) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Doc. 14).

At trial, Defendant exercised his right to testify in his own defense. He testified that he had the DVR and cameras installed at 4118 Shreve Ave. in April 2015. He further testified that certain of the DVR videos accurately portrayed him receiving deliveries of narcotics from "associates" while he contemporaneously supplied U.S. currency to the "associates," depicted him processing and repackaging those narcotics, and showed him later redistributing narcotics to other "associates," as they provided him U.S. currency. He also admitted that he had possessed a gun but insisted that he had possessed it in self-defense, not in furtherance of his drug crimes. According to Defendant, he had been shot in the eye during an armed robbery, and his house had been burglarized previously. He testified that these incidents had prompted him to acquire a

4

firearm for his own protection. Defendant admitted that he had at least one previous felony conviction; that on June 16, 2015, he owned and lived at the residence located at 4118 Shreve Ave.; and that he had lived there for several years prior to that date (Testimony of Defendant Kelvin Williams).

## **COUNT 1: FELON IN POSSESSION OF A FIREARM**

Count 1 charges Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). To convict Defendant on Count 1, the Government was required to prove beyond a reasonable doubt that (1) Defendant had a previous conviction of a crime punishable by a term of imprisonment exceeding one year; (2) Defendant knowingly possessed a firearm; and (3) the firearm was in or affecting interstate commerce. See 18 U.S.C. § 922(g)(1); United States v. Garcia-Hernandez, 803 F.3d 994, 996 (8th Cir. 2015) (citing United States v. Montgomery, 701 F.3d 1218, 1221 (8th Cir. 2012)). A conviction under § 922(g) may be based on constructive possession of the firearm. See United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014) (citing United States v. Walker, 393 F.3d 842, 846-47 (8th Cir. 2005)). "Constructive possession [of a firearm] is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." Id. (quoting Walker, 393 F.3d at 847).

First, Defendant admitted that he had a previous conviction for a crime punishable by more than one year in prison, and the Government produced a certified record that Defendant had previously been convicted of possession of heroin, a felony under Missouri law (Gv't Ex. 41). Second, Defendant testified that he possessed a gun, and the DVR footage confirms his admission. Moreover, SLMPD officers found the Walther model P1 make semiautomatic pistol in Defendant's bedroom. See Battle, 774 F.3d at 511. Third, the Government established that the

Walther P1 semiautomatic pistol was manufactured in Germany, that it was imported to the State of Washington, and that it thus travelled in interstate commerce before arriving in Defendant's possession in Missouri. The Court concludes that the Government has established beyond reasonable doubt each element of the crime of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The Court is not persuaded by Defendant's attempt to invoke self-defense as an affirmative defense. The Court concludes that, even assuming such as defense is available in the context of the § 922(g)(1) violation charged in Count 1, Defendant has not presented sufficient evidence to establish that he possessed the Walther P1 semi-automatic pistol in self-defense. Although the Eighth Circuit Court of Appeals has not yet recognized a justification defense to a violation of § 922(g), it has outlined four elements a defendant would be required to demonstrate before a district court could allow the defense:

> 1) that he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; 2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; 3) that he had no reasonable, legal alternative to violating the law; and 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

See United States v. Dinkins, No. 16-1732, 2017 WL 2304243, *2 (8th Cir. May 26, 2017) (unpublished per curiam opinion) (quoting United States v. Bonilla-Siciliano, 643 F.3d 589, 591 (8th Cir. 2011)).

Defendant has not presented any evidence that he was under an unlawful and present, imminent, or impending threat at the time he possessed the firearm; rather, he was not even home when SLMPD officers found the firearm in his residence, and the DVR footage shows Defendant possessing the Walther P1 semiautomatic pistol at times when he was home alone and under no

6

apparent threat. Further, the Court concludes that, given Defendant's contemporaneous possession and distribution of significant amounts of various controlled substances over a period of approximately two months, Defendant has not shown that he did not recklessly or negligently place himself in a situation in which it was probable he would be forced to commit a criminal act to defend himself. Moreover, Defendant had reasonable, legal alternatives to possessing the firearm. For these reasons and those set forth more fully on the record, the Court concludes that Defendant did not possess the firearm in self-defense, even assuming a justification would be available to the § 922(g) violation charged in Count 1 of the indictment. See United States v. Burnes, 666 F. Supp. 2d 968, 969-70 (D. Minn. 2009) (collecting cases in which Eighth Circuit has concluded that, even assuming self-defense is available in § 922(g) context, defendants had failed to present sufficient evidence that would have warranted such an instruction). Accordingly, the Court finds Defendant Kelvin Williams **GUILTY** on Count 1 of the Indictment.

### COUNT 2: POSSESSION WITH INTENT TO DISTRIBUTE IN EXCESS OF 50 GRAMS OF METHAMPHETAMINE; AND COUNTS 3, 4, AND 5: POSSESSION WITH INTENT TO DISTRIBUTE HEROIN, COCAINE, AND MARIJUANA

Count 2 charges Defendant with possession with intent to distribute in excess of 50 grams of methamphetamine, Count 3 charges him with possession with intent to distribute heroin; Count 4 charges him with possession with intent to distribute cocaine; and Count 5 charges him with possession with intent to distribute marijuana, all in violation of 21 U.S.C. § 841(a)(1). Each of these counts required the Government to prove that Defendant (1) knowingly possessed the controlled substance charged and (2) intended to distribute such controlled substance. United States v. Ahumada, 858 F.3d 1138, 1141 (8th Cir. 2017) (citing United States v. Morales, 813 F.3d 1058, 1065 (8th Cir. 2016)) (heroin); United States v. Ramos, 852 F.3d 747, 753 (8th Cir.

2017) (citing United States v. Trejo, 831 F.3d 1090, 1094 (8th Cir. 2016) (methamphetamine); United States v. Howard, 427 F.3d 554, 557 (8th Cir. 2005) (marijuana); see United States v. Edwards, 180 Fed. App'x 618, 619 (8th Cir. 2006) (unpublished per curiam opinion) (citing United States v. Howard, 427 F.3d 554, 557 (8th Cir. 2005)) (cocaine).

Knowing possession of a controlled substance may be either actual or constructive, and it need not be exclusive. United States v. Blakey, 449 F.3d 866, 869 (8th Cir. 2006). "Constructive possession of drugs can be established if the person has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997) (quoting United States v. Ojeda, 23 F.3d 1473, 1475 (8th Cir. 1994)).

The Government may prove Defendant's intent to distribute a controlled substance through circumstantial evidence. United States v. Gonzalez-Rodriguez, 239 F.3d 948, 952 (8th Cir. 2001) (citing United States v. Moore, 212 F.3d 441, 444 (8th Cir. 2000)). The Eighth Circuit has repeatedly held that the intent to distribute a controlled substance may be inferred from such things as "'quantity, purity, and presence of . . . packaging material, or other distribution paraphernalia.'" Id. (quoting United States v. Boyd, 180 F.3d 967, 980 (8th Cir. 1999)). "[T]he drugs' purity level, or the presence of cash, drug paraphernalia, firearms, and other evidence of drug-dealing, are all factors that can support an inference of intent to distribute." United States v. McClellon, 578 F.3d 846, 855 (8th Cir. 2009) (quoting United States Delpit, 94 F.3d 1134, 1153 (8th Cir. 1996)); see also United States v. Dawson, 128 F.3d 675, 677 (8th Cir. 1997) ("This Court has set forth factors from which an intent to distribute a controlled substance may be inferred. Most significant is the presence of a firearm."). Intent to distribute may also be inferred from a defendant's past conduct, including previous drug sales. McClellon, 578 F.3d at 855

(citing United States v. Turpin, 920 F.2d 1377, 1383 (8th Cir. 1990)). Possession of a large quantity of drugs is also consistent with an intent to distribute them. Id. at 854-55; United States v. Wiggins, 104 F.3d 174, 177 (8th Cir. 1997). However, even a small amount of a controlled substance, if bolstered by other evidence, can show intent to distribute. United States v. Shaw, 751 F.3d 918, 921-22 (8th Cir. 2014) (citing McClellon, 578 F.3d at 855).

The Government's evidence establishes beyond reasonable doubt that on June 16, 2015, SLMPD officers found significant amounts of narcotics at Defendant's residence at 4118 Shreve Ave, including 108.53 grams of a mixture or substance containing methamphetamine. See United States v. Parker, 32 F.3d 395, 401 (8th Cir. 1994) (in possession with intent to deliver case, defendant's possession of more than 100 grams of methamphetamine did not support jury instruction on lesser included offense of simple possession); see also United States v. Gentry, 555 F.3d 659, 668 (8th Cir. 2009) (citing Parker for the proposition that 100 grams of methamphetamine is exponentially greater than a user amount); cf. United States v. Boyd, 180 F.3d 967, 978-81 (8th Cir. 1999) (citing McCracken, 110 F.3d at 541) (discussing constructive possession of contraband). It also establishes that SLMPD officers found 16.16 grams of substances containing heroin, 24.06 grams of a substance containing both heroin and morphine, 118.43 grams of a substance containing cocaine, 0.45 grams of cocaine base; and 53.99 grams of marijuana in Defendant's bedroom. See United States v. Thompson, 686 F.3d 575, 585 (8th Cir. 2012) (260 grams of marijuana seized was much greater than the up to 42 grams of marijuana that could be considered a "user" quantity); United States v. White, 969 F.2d 681, 684 (8th Cir. 1992) (discussing user and non-user amounts of powder cocaine). During their search, SLMPD officers also found tools of the drug trade, including scales, rubber bands, baggies, and packaging materials; but notably, they did not locate any instruments of drug use, such as

syringes, pipes, or rolling papers. See McClellon, 578 F.3d at 855; Shaw, 751 F.3d at 921 (possession of drugs and tools of drug trade, but not instruments for their use, supported inference that defendant possessed the drugs with the intent to distribute them).

At trial, Defendant admitted that he resided at 4118 Shreve Ave. for several years up to and including June 16, 2015. See McClellon, 578 F.3d at 855 (the government submitted sufficient evidence of defendant's constructive possession of controlled substance where, inter alia, drugs were found in defendant's bedroom, and his wife testified he owned the house and had lived there for 25 years). During his testimony, Defendant also admitted that the DVR video accurately portrayed "associates" delivering narcotics to him at 4118 Shreve Ave. as he contemporaneously supplied U.S. currency to the "associates," depicted him processing and repackaging those narcotics, and showed him later redistributing narcotics to other "associates," as they provided him U.S. currency. See Turpin, 920 F.2d at 1383 (fact-finder could infer defendant's intent to distribute from evidence that defendant had sold controlled substance on previous occasions). For these reasons and the reasons set forth more fully on the record, the Court concludes that the Government established beyond reasonable doubt that Defendant knowingly possessed methamphetamine, heroin, cocaine, and marijuana; and that he did so with the intent to distribute it.

To convict Defendant on Count 2, the Government was also required to prove beyond a reasonable doubt that he knowingly possessed more than 50 grams of methamphetamine. See 21 U.S.C. § 841(b)(1)(B)(viii) (inter alia, providing for enhanced sentence for § 841(a) violation involving 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine); cf. Chapman v. United States, 500 U.S. 453, 456-60 (1991) (under plain language of § 841(b)(1)(B), the weight of the mixture or substance inclusive of any dilutant,

carrier medium, or cutting agent—not the weight of the pure drug—is controlling in determining weight of "mixture or substance containing a detectable amount" of drug). The Court concludes that the Government met this burden by producing laboratory test results that establish beyond a reasonable doubt that 108.53 grams of a substance or mixture containing methamphetamine were seized from Defendant's residence on June 16, 2015 (Gov't Ex. 43). For these reasons, the Court finds Defendant **GUILTY** on each of Counts 2, 3, 4, and 5 of the Indictment.

### COUNT 6: MAINTAINING PREMISES FOR THE PURPOSE OF DISTRIBUTING A CONTROLLED SUBSTANCE

Count 6 charges Defendant with maintaining a premises for the purpose of distributing a controlled substance, in violation of 21 U.S.C. § 856(b). Section 856(b) makes it unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). Whether a defendant has "maintained" a drug-involved premises is a "fact-intensive issue." United States v. Shores, 700 F.3d 366, 371 (8th Cir. 2012).

Distribution of drugs must be a "primary or principal uses for the premises," as opposed to one of the defendant's "incidental or collateral uses for the premises." United States v. Miller, 698 F.3d 699, 706 (8th Cir. 2012). Use of a premises for substantial drug trafficking can support a conviction under § 856, even if the premises also serves as the defendant's primary residence. Id. at 707 (collecting cases affirming § 856 convictions where defendants used the premises in question as a primary residence as well as for substantial drug trafficking).

Defendant testified that on June 16, 2015, he owned and lived at the residence located at 4118 Shreve Ave. and that he had lived there for several years prior to that date. He also confirmed that the DVR videos accurately recorded his activities at 4118 Shreve Ave. over the course of approximately two months, portraying him engaging in substantial drug trafficking

activities. See Shores, 700 F.3d at 370-71 (citing United States v. Holliman, 291 F.3d 498, 502 (8th Cir. 2002)) (participation in controlled buy at a premises the day before law enforcement officers seized drugs therefrom supported inference that distribution of drugs was primary purpose for defendant's maintenance of the premises). Specifically, the DVR videos depict him accepting deliveries of narcotics at 4118 Shreve Ave., processing and repackaging those narcotics at 4118 Shreve Ave., and thereafter redistributing the narcotics from 4118 Shreve Ave. See Miller, 698 F.3d at 706 (drug distribution was a primary or principal use of premises where defendant actively participated in at least three controlled buys at the premises and admitted accepting payments she knew were for drug purchases on other occasions). Moreover, on June 16, 2015, SLMPD seized significant amounts of methamphetamine, heroin, cocaine, and marijuana from Defendant's residence at 4118 Shreve Ave. See id. (substantial drug trafficking from premises can support a conviction under § 856). This evidence established that, over a substantial period of time, a primary or principal use of the premises was the distribution of drugs. For these reasons, the Court finds Defendant **GUILTY** on Count 6 of the Indictment.

### COUNT 7: POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME

Count 7 charges Defendant with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). To convict Defendant on Count 7, the Government must prove that Defendant (1) committed a drug trafficking crime and (2) possessed a firearm in furtherance of that crime. United States v. Robinson, 617 F.3d 984, 988 (8th Cir. 2010) (citing United States v. Garcia-Hernandez, 530 F.3d 657, 662 (8th Cir. 2008)). To establish the "in furtherance" requirement, the Government must establish "a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward the drug crime.'" Id. (quoting United States v.

Sanchez-Garcia, 461 F.3d 939, 946 (8th Cir. 2006)). The requisite nexus between the firearm and the drug crime may be inferred if "the firearm 'is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking.'" Shaw, 751 F.3d at 922 (quoting United States v. Fetters, 698 F.3d 653, 658 (8th Cir. 2012)).

As discussed above, SLMPD officers found two guns in Defendant's residence, one of which was a Walther make P1 model semi-automatic pistol. Notably, the pistol was discovered in Defendant's bedroom, where officers also found substantial amounts of heroin, cocaine, and marijuana. The DVR video also depicts Defendant displaying a firearm on a nearby table while he distributed narcotics on one occasion and hiding a firearm under a sofa cushion, where it was quickly accessible, immediately before he participated in drug transaction on another occasion. See McDaniel, 838 F.3d at 957-58 (affirming conviction under § 924(c)(1) where, inter alia, defendant kept firearms in his house and in the same room as drugs, and admitted that he kept them loaded "in case something did happen to his house if he was there"). Moreover, the DVR video shows Defendant holding a firearm while peering out of a window of 4118 Shreve Ave. (Gov't Ex. 47, 60, 75). In light of the DVR video's depiction of Defendant, on several occasions, possessing a gun in close temporal and physical proximity to his possession of substantial amounts of narcotics and transactions involving those narcotics, the Court concludes that the Government established beyond a reasonable doubt that Defendant possessed a firearm in furtherance of his drug trafficking crimes. See Shaw, 751 F.3d at 922.

During his testimony at trial, Defendant admitted he had possessed the gun but insisted he had done so in self-defense, not in furtherance of his drug crimes. It appears that Defendant had been shot in the eye during a prior armed robbery, and his house had been burglarized

previously. According to Defendant, these incidents had prompted him to acquire a firearm for his own protection. The Court acknowledges that Defendant may have acquired the gun, initially and at least in part, to protect himself from future violence. That said, even if the Court were to assume that Defendant acquired the gun intending that he would use it only in self-defense, the evidence nevertheless establishes beyond a reasonable doubt that his subsequent possession of the gun had the effect of furthering, advancing, or helping forward his drug trafficking crimes. See Robinson, 617 F.3d at 988. The Court thus concludes that the Government proved beyond a reasonable doubt that Defendant possessed the firearm in furtherance of his possession with intent to distribute methamphetamine, heroin, cocaine, and marijuana. For these reasons, the Court finds Defendant **GUILTY** on Count 7 of the Indictment.

## CONCLUSION

For these reasons and the reasons set forth more fully on the record, the Court concludes that the Government has established beyond reasonable doubt that Defendant committed each element of each of Counts 1 through 7 as charged in the Indictment. Accordingly,

**IT IS HEREBY ORDERED** that the Court finds Defendant Kelvin Williams **GUILTY BEYOND A REASONABLE DOUBT** on each of Counts 1 through 7 of the Indictment.

Dated this 27th day of July, 2017.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE